### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ANTONINA MATTIOLI,
    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

No. 3:14-cv-00182 (JAM)

### RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Antonina Mattioli claims that she is disabled and cannot work as a result of hypothyroidism, Lyme disease, diabetes, depression, and anxiety. She has brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, who denied her 2011 claim for supplemental security income (SSI) and disability insurance benefits (DIB). The Commissioner concluded that although plaintiff suffered from severe impairments and could not work in her previous job as a home companion and housekeeper, she could still work in another type of job. For the reasons that follow, I will grant in part plaintiff's motion for summary judgment and deny defendant's motion to affirm the decision of the commissioner, and I will remand the case for prompt reconsideration by the ALJ.

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner, as well as the comprehensive factual background set forth in Magistrate Judge Fitzsimmons's Recommended Ruling. Docs. #14-1 through #14-9; #23.

Plaintiff completed college in Russia, has two adult children, and came to the United States from Estonia in 1996. She worked as a housekeeper for about one year and as a personal aide/companion from 2001 through 2004 and 2007 through 2009. As a companion, plaintiff

cooked, cleaned, and shopped for groceries; she also frequently lifted ten pounds and was required at times to lift her employer, who weighed about 200 pounds.

Plaintiff was 57 years old on January 1, 2011, the date of the alleged onset of her disability. She stopped working in 2009 because she experienced pain and fatigue. She cites hypothyroidism, Lyme disease, diabetes, depression, and anxiety as the source of her disability.

At the time of her SSI/DIB filing, plaintiff lived alone, and her day consisted of taking medications, resting, trying to eat and shower, and attending medical appointments. In a 2011 questionnaire, plaintiff indicated that she shopped for groceries weekly, performed light cleaning for 20 to 30 minutes each day, handled her own finances, and prepared her own meals. But she had difficulty standing for long periods of time and was thus unable to cook; she also rarely drove and described herself as frequently dizzy and as having difficulty concentrating. At her 2012 hearing, plaintiff testified that she had near-constant pain in her legs, hands, shoulders, and back. At that time, she was seeing a cardiologist, psychologist, and psychotherapist, in addition to her primary care physician.

Plaintiff's benefits petition was denied initially in October 2011 and upon reconsideration in November 2011. After a hearing was held in September 2012 at plaintiff's request, Administrative Law Judge (ALJ) Ronald J. Thomas held that plaintiff was not disabled as defined by the Social Security Administration. Plaintiff requested Appeals Council review, which was subsequently denied in December 2013. She then filed this federal action, seeking review of the Commissioner's decision and asking that the Court reverse the Commissioner's decision or remand the case for rehearing. Plaintiff has moved for summary judgment (Doc. #18), and the Commissioner has moved to affirm its final decision (Doc. #20).

The case was referred to Magistrate Judge Holly B. Fitzsimmons, who filed a

Recommended Ruling to deny plaintiff's motion for summary judgment and to grant defendant's

motion for order to affirm the decision of the Commissioner. Doc. #23. Plaintiff has filed a

narrow objection to the Recommended Ruling, contending that the ALJ erred by failing to

consider vocational expert testimony when considering plaintiff's ability to perform jobs that

exist in significant numbers in the national economy or, alternatively, that the ALJ erred by

failing to explain why vocational expert testimony should not be considered. Doc. #24.[1] I agree

in substantial part with plaintiff. I conclude that the ALJ should have addressed whether

plaintiff's non-exertional limitations were more than negligible such that vocational expert

testimony should be considered.

## DISCUSSION

This Court "may adopt those portions of the recommended ruling to which no timely

objections have been made, provided no clear error is apparent from the face of the record."

*Dafeng Hengwei Textile Co. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 291

(E.D.N.Y. 2014). Except as to the portion of Judge Fitzsimmons' ruling that has been the subject

of objection, I find no clear error here. But I must otherwise "review[ ] the parts of the report and

recommendation to which the party objected under a *de novo* standard of review." *Ibid.*; *see also*

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Court may "set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by substantial evidence or if the decision is

based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation

marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence may be defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[1] The Commissioner has not filed a response to plaintiff's objection.

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citation omitted).

To qualify for disability insurance benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country" and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he or she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). In applying this framework, if a claimant can be found disabled or not disabled at a particular step, a decision will be made without proceeding to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving her case at steps one through four, while at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

Here, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since before January 2011. At step two, he determined that plaintiff's hypothyroidism, Lyme disease, diabetes mellitus, depression, and anxiety constituted severe impairments and that these "impairments are severe because they cause more than minimal functional limitations." Doc. #14-3 at 24. But he could not conclude that plaintiff was *per se* disabled under step three because plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Ibid.*

Proceeding to step four, the ALJ was required next to identify plaintiff's "residual functional capacity" (RFC), which is "the most the claimant can still do in a work setting despite the limitations imposed by h[er] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*). The ALJ concluded that plaintiff's RFC enabled her to perform "a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to only occasional interaction with the public, coworkers, and supervisors; and she can

only occasionally bend, stoop, twist, squat, kneel, crawl, climb, or balance." Doc. #14-3 at 25;

*see also* 20 C.F.R. § 404.1567. Based on this evaluation, the ALJ determined that plaintiff could

not perform any of her past work as a housekeeper and home companion. However, at step five

he considered plaintiff's age, education, work experience, and RFC to conclude that plaintiff is

capable of performing jobs that exist in significant numbers in the national economy, and

therefore concluded that plaintiff is not disabled as defined by the Social Security Act. *See* §

404.1520.

Judge Fitzsimmons agreed with the ALJ's resolution as to each of the five steps of the

analysis, and plaintiff objects only to Judge Fitzsimmons's determination that it was proper at

step five for the ALJ to rely exclusively on the Social Security Administration's Medical-

Vocational Guidelines (colloquially known as "the Grids") to determine whether plaintiff could

find work in the national economy. Plaintiff contends that the ALJ was obligated to consider

testimony from a vocational expert to make this determination or, at the least, to explain why

vocational expert testimony should not be considered.

It is well established that the Commissioner may ordinarily satisfy her burden of proof at

step five by means of reliance on the Grids and their determinations of the types and numbers of

jobs that exist in the national economy based on a claimant's age, ability, education, and work

experience. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks

and citation omitted); *see also Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). But the Grids

are premised on limitations relating to a person's physical strength, and "are inapplicable in

cases where the claimant exhibits a significant non-exertional impairment (*i.e.,* an impairment

not related to strength)." *Selian*, 708 F.3d at 421; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §

200.00(e) (Grids not "fully applicable" for "certain mental, sensory, or skin impairments" or

"postural and manipulative limitations or environmental restrictions").

If the Grids are inadequate, then an ALJ must instead consider vocational expert testimony. *See Butts v. Barnhart*, 388 F.3d 377, 383–84 (2d Cir. 2004) [hereinafter *Butts I*], *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) [hereinafter *Butts II*]. The Second Circuit maintains a case-by-case approach to assessing applicability of the Grids and the need for expert testimony to determine the employability of claimants who fall into this category. *See ibid.*; *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

Notably, the Second Circuit has made clear that "the ALJ cannot rely on the Grids if a non-exertional impairment [such as a mental or postural limitation] has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead [the ALJ] must obtain the testimony of a vocational expert." *Selian*, 708 F.3d at 421 (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). "A nonexertional impairment is non-negligible 'when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Ibid.* (quoting *Zabala*, 595 F.3d at 411).[2]

An ALJ must make a specific finding on the significance of the nonexertional impairment, and adequately explain that finding on the record, to determine whether he or she must consider testimony from a vocational expert. *See Bapp*, 802 F.2d at 603, 605–06. If the ALJ declines to hear vocational expert testimony in the face of evidence that a claimant has significant nonexertional limitations, but offers no adequate explanation for his decision, *ibid.*, or if the ALJ fails "to apply correctly the distinction between cases where reliance on the grid suffices and those where the testimony of a vocational expert is essential to a denial of benefits,"

---

[2] Judge Fitzsimmons framed the inquiry in terms of whether there was a "significant" non-exertional limitation. Doc. #23 at 54–56. It is true that some precedent suggests that vocational expert testimony need only be considered if there are "significant" non-exertional limitations, but the precedent is also clear that "significant" in this context means anything that causes more than a negligible loss of work capacity. *See, e.g.*, *Zabala*, 595 F.3d at 411; *Bapp*, 802 F.2d at 605–06.

a court should remand the case. *Butts I*, 388 F.3d at 387; *see also Ramos v. Barnhart*, 2006 WL 980570, at *13 (D. Conn. 2006) ("Remand is particularly appropriate where . . . the Court is 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or a clearer explanation for the decision.'" (citation omitted)).

Here, the ALJ concluded that plaintiff's nonexertional limitations allow her only occasional interaction with the public, coworkers and supervisors, and only the occasional ability to bend, stoop, twist, squat, kneel, crawl, climb, or balance. *See* Doc. #14-3 at 24. But the ALJ noted at step five that in the case of a claimant who has "solely non-exertional limitations, section 204.00 in the [Grids] provides a framework for decision-making." Doc. #14-3 at 29 (citing *Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985) [hereinafter SSR 85-15]). The ALJ's decision does not discuss whether plaintiff's non-exertional limitations were "non-negligible" or not, and whether he should consult resources outside the Grids to evaluate plaintiff's ability to work.

Although the ALJ acknowledged that plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," Doc. #14-3 at 29, the ALJ's decision did not determine whether those non-exertional limitations were more than non-negligible. Instead, the ALJ concluded that plaintiff's "limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *Ibid.* This conclusion (with its focus on the Grid's occupational base rather than plaintiff's own limitations) "failed to consider the intermediate question—whether the range of work [plaintiff] could perform was so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606. This is critical, in light of evidence of plaintiff's nonexertional limitations. *See, e.g.*, Doc. #14-8 at 101

8

(letter from plaintiff's mental health providers indicating that plaintiff experiences "debilitating" symptoms of depression and anxiety and that "[c]linically, she fits a profile of individuals who experience profound psychiatric symptoms in response to a traumatic event or ongoing situational stress.").

Research discloses that numerous other ALJ decisions have recited verbatim the same language that the ALJ chose to use here—that a claimant's non-exertional "limitations have little or no effect on the occupational base of unskilled work at all exertional levels," and other courts have found this bare conclusion inadequate to avoid considering or relying on vocational expert testimony. *See, e.g.*, *Shaughnessy v. Astrue*, 778 F. Supp. 2d 151, 157 (D. Mass. 2011); *Solsbee v. Astrue*, 737 F. Supp. 2d 102, 115–16 (W.D.N.Y. 2010); *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1080 (W.D. Wis. 2008).

Accordingly, I remand the case to the ALJ to reconsider his determination as to step five. *See Selian*, 708 F.3d at 422 (remanding in light of absence of ALJ finding as to whether nonexertional reaching limitation was "negligible" in light of ALJ "finding that [claimant] could reach only 'occasionally'"); *Dambrowski v. Astrue*, 590 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) ("Because the plaintiff claimed a significant nonexertional impairment, the ALJ was required to 'introduce the testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform'") (quoting *Bapp*, 802 F.2d at 603)); *see also* SSR 85-15 ("Limitations in *climbing and balancing* can have varying effects on the occupational base, depending on the degree of limitation and the type of job. . . . Where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a [vocational specialist] may be necessary."); *ibid.* ("Determining whether [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely

difficult" and requires a thorough "evaluation on an individualized basis.").

On remand, the ALJ should provide a clear explanation regarding the extent to which plaintiff's nonexertional limitations diminish her ability to perform work at all levels. If the ALJ concludes that plaintiff's nonexertional limitations are more than non-negligible, then he should consider vocational expert testimony to ascertain the existence of jobs in the economy for an individual with plaintiff's limitations. If the Commissioner fails to present "a vocational expert to testify that a person with [plaintiff's] attributes and qualifications could find" work in the national economy, the ALJ should conclude that plaintiff is disabled. *Butts II*, 416 F.3d at 104. The ALJ should complete this reconsideration within either 120 days or 90 days from the date that plaintiff advises the ALJ that she is ready to go forward with further proceedings, whichever is longer. *See Barbour v. Astrue*, 950 F. Supp. 2d 480, 491 (E.D.N.Y. 2013), *amended on reconsideration* (July 25, 2013).

### CONCLUSION

Plaintiff's motion for summary judgment (Doc. #18) is GRANTED. Defendant's motion for order to affirm the decision of the Commissioner (Doc. #20) is DENIED. The case is remanded for the ALJ to promptly evaluate the significance of plaintiff's nonexertional limitations and, if necessary, to consider vocational expert testimony as to plaintiff's ability to find work that exists in the national economy.

It is so ordered.

Dated at New Haven this 11th day of August 2015.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge